## GEORGE T. COULTER *v.* EMMA McCORD SCHOFIELD.

### No. 2029.

Argued November 25, 1931.     Decided March 5, 1932.

Perry, C. J., Banks and Parsons, JJ.

OPINION OF THE COURT BY BANKS, J.
(Perry, C. J., dissenting.)

This is a suit on a promissory note for $650 with interest from date, together with costs and attorney's fees. The note was executed by the defendant on March

30, 1927, and was payable one year thereafter to the order of the United Realty Company, Limited. Prior to the commencement of this action it was duly transferred and assigned to George T. Coulter, the plaintiff, for collection. Defendant pleaded the general issue and also gave notice in her plea that she intended to rely on "illegality, fraud, release, compromise, recoupment, accord and satisfaction and payment." The court below, trying the case without a jury, rendered a decision against the plaintiff and in favor of the defendant and entered judgment accordingly. Plaintiff brings the case here on exceptions.

The case was tried on the following agreed statement of facts: "It is hereby stipulated by and between the parties in the above entitled cause that on the 12th day of March, 1927, the United Realty Company, Ltd., acting through Magoon Brothers, Ltd., their agents, accepted the sum of one hundred dollars ($100.00) from Emma McCord Schofield as part payment for the purchase of a certain piece of real property and delivered and presented to the defendant Emma McCord Schofield a standard form of Hawaiian Realty Board receipt, a true copy of which is hereby attached to this stipulation and made a part hereof and marked exhibit 'A;' that on, to-wit: the 31st day of March, 1927, the United Realty Company, Ltd., an Hawaiian corporation, entered into an agreement with the defendant Emma McCord Schofield for the sale of certain real property for the purchase price of three thousand seven hundred fifty dollars ($3750.00), described in said agreement, a copy of said agreement is hereby attached to this stipulation and made a part hereof and marked exhibit 'B;' said instrument being drawn up and prepared by the vendor, and was duly recorded on May 3, 1927, in the office of the registrar of conveyances; that on, to-wit: the 31st day of March, 1927, the date upon which the agreement, marked exhibit

'B,' attached to this stipulation and made a part hereof, was entered into, the United Realty Company, Ltd., was the owner of the property described in said agreement; that pursuant to the agreement contained in exhibits 'A' and 'B,' the defendant Emma McCord Schofield paid to the United Realty Company, Ltd., as aforesaid, the sum of one hundred ($100.00) dollars in cash and on the same day of execution and delivery of exhibit 'B' the defendant executed and delivered to the United Realty Company, Ltd. her certain promissory note in the sum of six hundred fifty ($650.00) dollars which is the same note set forth in the complaint in the above entitled action and said one hundred ($100.00) dollars and note is the seven hundred fifty ($750.00) dollars mentioned in paragraph 2-a of exhibit 'B;' that on, to-wit: the 5th day of May, 1927, prior to the time the note executed by the defendant was due, the United Realty Company, Ltd. executed and delivered to The Dowsett Company, Ltd., an Hawaiian corporation, the indenture of that date, a copy of which is attached hereto and made a part hereof and marked exhibit 'C' which said agreement was recorded in said registrar's office on January 7, 1928; that on, to-wit: the 11th day of July, 1928, the release, a true copy of which is attached hereto and made a part hereof and marked exhibit 'D' was duly executed and delivered and was recorded on July 27, 1928, and that the said The Dowsett Company, Ltd. had notice of the said note prior to the execution of exhibit 'C;' that shortly prior to the commencement of this action, to-wit: in July, 1930, the United Realty Company, Limited, demanded of defendant that she pay the amount covered by said promissory note, to-wit, the sum of six hundred fifty dollars ($650.00), together with interest thereon from March 31, 1927, but defendant refused to pay the same; that thereafter and prior to the commencement of this

action the United Realty Company, Limited, transferred said promissory note to plaintiff by written endorsement on the back thereof for collection; that plaintiff since said transfer has made demand upon defendant for the aforesaid sum of six hundred fifty dollars ($650.00), together with interest thereon from the 31st day of March, 1927, but the defendant refused to pay the same and no part of the same has been paid either to the United Realty Company, Limited, or to plaintiff. A true copy of said promissory note is hereto attached and made a part hereof and marked exhibit 'E.' It is further stipulated that the foregoing constitutes a complete statement of all the facts in this case."

By the "indenture" (which was a quitclaim deed), referred to in the stipulated facts as having been executed by the United Realty Company to the Dowsett Company on May 5, 1927, the former conveyed to the latter all of its interest in certain described lands, including the land which the realty company had previously contracted to sell to Mrs. Schofield. The habendum clause of this deed is as follows: "To have and to hold the same together with the tenements, rights, easements, privileges and appurtenances to the same belonging or appertaining, or held and enjoyed therewith unto the said grantee, its successors and assigns forever, subject, however, to the following agreements of sale." Among the itemized agreements of sale is that entered into with Mrs. Schofield.

Subsequent to this deed the Dowsett Company and Mrs. Schofield agreed, in writing, to cancel the contract between the realty company and Mrs. Schofield, the agreement, after some preliminary recitals, being expressed as follows: "That the said The Dowsett Company, Limited, and the said Emma McCord Schofield, for and in consideration of the sum of one ($1.00) dollar, to

each by the other paid, do hereby covenant and agree to and with each other that the said agreement so dated the 31st day of March, 1927, between the said Emma McCord Schofield and the said United Realty Company, Limited, be, and the same is hereby revoked, cancelled and annulled, and each and all of the parties thereto, or therein interested, are released and discharged from any and all obligations created thereby or thereunder."

The ultimate question presented is whether Mrs. Schofield was released by this agreement from her obligation to pay to the United Realty Company or its assignee, the plaintiff herein, the note upon which the present action is brought. The circuit judge took the view that she was released. This view was predicated upon the assumption that the $650 represented by the note was a part of the purchase money outstanding under the contract between Mrs. Schofield and the realty company and that when the Dowsett Company took a grant from the realty company of its interest in the land, subject to this contract, the legal effect was to transfer to the Dowsett Company complete ownership of the note. Whether this conclusion is sound or unsound depends, we think, upon how the note for $650 was regarded by Mrs. Schofield and the realty company. If in their contract they agreed that its payment was a condition precedent to Mrs. Schofield's right to a conveyance of the property, then under a well-recognized principle of law it was undoubtedly an outstanding part of the purchase price and the right to collect it or forego its collection passed to the Dowsett Company. It is said in 39 Cyc. 1664: "By the weight of authority, if a vendor under contract to convey land or bond for title conveys the land to a third person subject to the contract, the second grantee is entitled to the purchase money outstanding on the contract, unless there is an agreement

to the contrary."

If, on the other hand, the note was understood by the parties to be a part of the cash-down payment on the purchase price of the land and the vendor obligated itself to convey the title regardless of whether the note was paid or not, then it did not under the contract represent a part of the outstanding purchase price and the rule quoted would not be applicable. The relevant portions of the contract are as follows: "This agreement made and entered into this 31st day of March, 1927, by and between United Realty Company, Limited, an Hawaiian corporation, hereinafter called the seller, * * * and Emma McCord Schofield, hereinafter called the purchaser, * * * Witnesseth: That the seller hereby agrees to sell to the purchaser, for and in consideration of the sum of thirty-seven hundred and fifty ($3750.00) dollars, to be paid as hereinafter provided" (then follows description of property): "subject to the terms and conditions hereinafter set forth; * * * 1. That the purchaser agrees to purchase said premises hereinabove described for the said consideration of thirty-seven hundred and fifty ($3750.00) dollars, payable as hereinafter provided: 2. That the purchaser, in consideration of the mutual promises and agreements of the seller herein set forth, agrees as follows: (a) To pay the sum of thirty-seven hundred and fifty ($3750.00) dollars, of which the sum of seven hundred and fifty ($750.00) dollars as a deposit is now paid, the receipt of which the seller hereby acknowledges, the balance of three thousand ($3000.00) dollars to be paid as follows: in equal quarter-annual payments with interest at the rate of seven per cent (7%) per annum on all unpaid balances, the entire principal sum and interest to be paid on or before the expiration of six years from the date hereof."

The conditions upon which the vendor obligated itself

to deliver a deed to the property described are as follows: "To deliver or cause to be delivered to the purchaser, at the expense of the seller, a deed of the property herein intended to be conveyed, free and clear of all incumbrances, upon the payment in full of the purchase price, plus the interest at the rate of seven per cent (7%) per annum within the time hereinabove set forth."

One of the facts agreed upon is that of the $750 recited in the contract to have been paid, only $100 was paid in money and the note involved in this suit was taken for the balance. It seems clear from the covenant of the realty company to deliver title that the only prerequisite to the enforcement of this agreement was the payment of the $3000 mentioned in the contract as the balance due. This is apparent from the last phrase in the covenant. No other payments on the purchase price were required by the contract to be made "within the time hereinabove set forth," except the installments aggregating $3000. If this does not limit the payment which Mrs. Schofield was obliged to make it is entirely meaningless. There is not the slightest reference to the $650 evidenced by the note here involved. The significance of the omission of the $650 from the amount Mrs. Schofield was obliged to pay before demanding a deed is emphasized by the fact that the contract recites that $750 had been paid and that the balance due was $3000. The view we take is further sustained by the following clause of the contract: "If the purchaser shall fail to pay any one of the said installments, either of principal or interest, as the same become due as hereinbefore mentioned, for payment thereof, and for the space of thirty (30) days thereafter, or if the purchaser shall fail to observe or perform any of the agreements herein contained and on her part to be observed and performed, then, and in any of such cases, the seller may, after

giving notice thereon by publication once a week for at least three (3) successive weeks in a newspaper printed and published in Honolulu aforesaid, sell the said lot or parcel of land with all improvements thereon at public auction at such time and place as to it may seem best * * *." (Then follows a provision for the application of the proceeds of the sale.) Again, there is no reference to the $650 evidenced by the note and so far as the payment of the purchase price is concerned the only default that would justify the vendor in selling the property at public auction was the failure to pay the installments on the $3000. as they became due.

Since the purchaser was not required by the contract to pay the amount represented by the note as a condition precedent to the exercise of her right to demand a deed nor to pay it in order to protect herself against the sale of the property by the vendor at public auction, there seems to be no basis for the contention that it was, under the contract, an outstanding part of the purchase price of the land which passed to the Dowsett Company. In that respect it differs from the balance of $3000 which the purchaser by the terms of the contract was required to pay before she could assert her right to a conveyance of the property or before she could protect herself against a forfeiture of that right. This latter amount was by the contract made an outstanding part of the purchase price, and under the rule quoted from Corpus Juris, *supra,* complete dominion over it passed to the Dowsett Company. If the $650 had been similarly treated by the parties the rule would have applied to it as well in spite of the fact that the receipt of $750, of which only $100 was paid in money, was acknowledged in the contract. Under these circumstances, if they had existed, the note would have merely represented a part of the balance of the purchase price of the land, which the purchaser was

required to pay before her right to demand a deed accrued. In other words, the note, although taken in lieu of cash, would have been nothing more than a postponement of her obligation to pay $650 in order to assert her rights under the contract.

It would be inaccurate to say that the view we take of the contract between Mrs. Schofield and the realty company leads to the conclusion that the realty company could recover judgment on the note even though it repudiated the contract and refused to convey the land. In that case there would be an entire failure of consideration which would not only furnish Mrs. Schofield a complete defense but would entitle her to recover the $100 she had already paid. There is a wide difference between making a conveyance of a good title the consideration for the note and making the payment of the note a condition precedent to the conveyance of such title.

For the foregoing reasons the exceptions are sustained, the judgment is set aside and a new trial is granted.

*J. R. Cades (Smith & Wild* on the briefs) for plaintiff.

*H. E. Stafford* (also on the brief) for defendant.

### DISSENTING OPINION OF PERRY, C. J.

While concurring in the view that if a vendor under contract to convey land conveys it to a third person subject to the contract the second grantee is entitled to the purchase money outstanding on the contract unless there is an agreement to the contrary, I dissent from the conclusion that in the case at bar the $650 named in the promissory note is not a part of the purchase money outstanding on the contract and therefore did not pass to the Dowsett Company, Limited, the second grantee.

On principle it is sound that when there is a conveyance subject to an earlier contract to convey the whole or a part of the same land the second grantee to whom

is transferred the burden of conveying to the earlier purchaser should also receive the emoluments flowing from the contract to convey. In the instrument of March 31, 1927, the United Realty Company agreed to sell and the present defendant agreed to purchase a certain lot of land. The instrument dealt solely with the terms of the understanding and agreement of the parties whereby one was to sell and the other was to buy. The parties therein declared that the seller thereby agreed to sell to the purchaser "for and in consideration of the sum of $3750" the lot in question; and that the purchaser agreed to purchase said premises "for the said consideration of $3750, payable as hereinafter provided." These two statements are entirely unambiguous. If they stood alone there could not be the slightest doubt that the purchase price was $3750 and not any less sum. Next comes the statement that the purchaser, in consideration of the promises of the seller, agreed "to pay the sum of $3750, of which the sum of $750 as a deposit is now paid, the receipt of which the seller hereby acknowledges, the balance of $3000 to be paid as follows: in equal quarter-annual payments with interest at the rate of 7% per annum on all unpaid balances, the entire principal sum and interest to be paid on or before the expiration of six years from the date hereof." Here again is found a reiteration of the statement that the aggregate sum to be paid is $3750. It is true that it is recited that $750 "as a deposit is now paid." But the parties themselves have stipulated that in truth and in fact only $100 of the $750 was paid and that the promissory note now sued upon, for $650, was taken. The rule obtaining in most jurisdictions, and I think the correct rule, is that "in the absence of agreement or consent to receive it as such * * * a promissory note of the debtor * * * does not in itself constitute payment or amount to a discharge of

the debt, although it may postpone the right of action thereon until the maturity of the paper." 48 C. J. 610-612. The minority rule, to the opposite effect, is said to prevail only in Indiana, Maine, Massachusetts and Vermont. *Ib.* 612. There is nothing in this contract to show that the parties intended to give and receive the note as payment *pro tanto* or that the realty company intended thereby to take that sum of $650 out of the purchase price and to make it a separate transaction, or that it waived with reference to the $650 its rights under the contract. It is obvious, to my mind, that when the agreement of March 31, 1927, was drawn it was expected by both parties that the sum of $750 would be wholly paid "as a deposit." There is, however, no room for surmise or inference as to what actually happened. Both parties have stipulated, as a part of the evidence in the case, that only $100 was paid and that $650 was not paid. In the paragraph last above quoted the parties have expressly reiterated that "the *entire* principal sum" is "to be paid on or before the expiration of six years from the date hereof." The "entire" principal sum means the whole of it, nothing less.

Reading further in the instrument, the seller agreed, in consideration of the promises of the purchaser, to deliver to the purchaser possession of the premises upon execution of the document and secondly "to deliver * * * to the purchaser * * * a deed of the property * * * upon the payment in full of the purchase price, plus interest at the rate of 7% per annum, within the time hereinabove set forth." It seems to me that the statement that the undertaking was to deliver a deed "upon the payment in full of the purchase price" is likewise unambiguous and that the statement in the same sentence that the purchase price is to be paid "within the time hereinabove set forth" is not sufficient to indicate that the parties were then

for the first time taking the $650 out of the purchase price and leaving it a detached obligation of the purchaser. Instead of insisting upon the payment of the whole $750 at the time of the execution of the contract, the realty company was willing to receive a written promise to pay within one year from that date. That is the time named in the note, but that is the only change, so far as I can see, that was made. If the purpose of the parties had been to receive the note as absolute payment of $650 and thereby to render the realty company obligated to convey upon the payment of the remainder of $3000, even though the purchaser failed and expressly refused to pay the $650, how simple a matter it would have been to have said so by some apt language in the instrument defining the rights and duties of each of the two parties. The paragraph quoted in the leading opinion authorizing the seller under certain circumstances to sell the lot and to apply the proceeds in certain prescribed ways does not in my opinion require a different conclusion. The statement there is that this right of the seller to sell would accrue "if the purchaser shall fail to pay any one of the said installments either of principal or interest, * * * or if the purchaser shall fail to observe or perform any of the agreements herein contained and on her part to be observed and performed." One of the agreements which the purchaser undertook to observe and perform was the agreement to pay the *whole* of the purchase price. As long as the note is not paid that agreement is not performed. There is nothing in the paragraph immediately under consideration to indicate that the parties meant to say that the purchaser need not pay the $650 and would still be entitled to a deed without its payment.

The contract should be construed as a whole. In its essence it was nothing but an agreement to sell and to

buy a piece of land for the consideration of $3750. No other consideration is named anywhere in the instrument. The undertaking to convey was conditioned upon payment of the entire purchase price, not merely a part of it. If the realty company had not conveyed to the Dowsett Company and had, after the expiration of the one year named in the note, informed the defendant that it repudiated the agreement of March 31, 1927, and that it refused to convey to her under any circumstances and had subsequently sued the defendant upon the note for the recovery of the $650, can it be that it could have recovered judgment? I cannot take the view that under those circumstances the realty company would be entitled to recover the $650. The reason for its failure would be that there was a failure of consideration, that the promise to pay the $650 was in consideration of the realty company's agreement to convey, that both promises were a part of the same transaction and that the $650 was a part of the purchase price agreed upon by the parties and was not the subject of a detached and independent agreement.

As a part of the purchase price the note whereby the purchaser promised to pay the $650 in one year passed to the Dowsett Company and was by it released to the defendant as a part of the mutual releases effected by the instrument of July 11, 1928, revoking the agreement of March 31, 1927.

In my opinion the judgment under review, in favor of the defendant, should be affirmed.